**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SABRINA MILLER-CHISLEY, et al )
                                  )
         Plaintiffs, )
         v. )         Civil No. WGC-05-250
                                  )
BRADWAY TRUCKING, INC. )
                                  )
         Defendant. )
_____)

**MEMORANDUM OPINION**

Plaintiffs, the beneficiaries of decedent Michael Miller and the personal representatives of his estate, brought this action against Bradway Trucking, Inc. ("Bradway") alleging wrongful death and negligent entrustment as well as asserting a survivorship claim. The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* Docket Nos. 21-22, 26. Pending before the court and ready for resolution is Defendant's Motion for Partial Summary Judgment on Count III for Negligent Entrustment (Docket No. 47). Plaintiffs filed an Opposition (Docket No. 50), and Defendant a Reply (Docket No. 56). No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md.).

**I. BACKGROUND**

On November 4, 2003, between 5:50 - 6:00 a.m., Joseph A. Jobes ("Jobes") was operating a tractor-trailer owned by Bradway on northbound U.S. Route 301 near Queenstown on Maryland's Eastern Shore. Jobes struck the rear of a street sweeper operated by Floyd Dilsaver. This collision resulted in the Bradway tractor-trailer overturning and landing on it side

1

blocking both northbound lanes of traffic.  Thereafter, Michael Miller ("Miller"), operating a

tractor-trailer and traveling northbound on U.S. Route 301 behind the Bradway tractor-trailer,

collided with the overturned Bradway vehicle.  This second collision resulted in Miller's tractor-

trailer careening across the median, across the southbound lanes of U.S. Route 301 and

ultimately resting against a tree on the shoulder of southbound U.S. Route 301.  Miller died on

the scene from injuries he sustained.

In their Amended Complaint, Plaintiffs allege Negligent Entrustment against Bradway,

specifically,

> Joseph A. Jobes, an employee of the Defendant, was a person
> likely to use a motor vehicle in a manner involving unreasonable risk
> of physical harm to Plaintiff and others using public roadways.
>
> Defendant Bradway Trucking, Inc. knew, or should have known,
> that Mr. Jobes was a person likely to use a motor vehicle in a manner
> involving unreasonable risk of physical harm to Plaintiff and others
> using public roadways.
>
> Defendant Bradway Trucking, Inc. was negligent in that [it]
> entrusted the use of [its] vehicle to Joseph A. Jobes, and was
> otherwise careless, reckless and negligent.

Am. Compl. ¶¶ 21 - 23.

## II.  <u>STANDARD OF REVIEW</u>

A motion for summary judgment will be granted only if there exists no genuine issue as

to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam*

*Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrision v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 323.  On the other hand, on those issues on which the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence.  *Anderson*, 477 U.S. at 256.  However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'"  *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)).  There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. <u>DISCUSSION</u>

This traffic accident occurred in the State of Maryland.  There is no dispute that Maryland substantive law governs the issues in this case.  Maryland recognizes the tort of negligent entrustment as expressed in the Restatement (Second) of Torts, § 390 (1965):

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

The Court of Appeals has applied this doctrine to automobiles recognizing that an automobile is not inherently dangerous but is potentially dangerous.  *Rounds v. Phillips*, 166 Md. 151, 170 A. 532, 536 (1934).  "[T]he doctrine of negligent entrustment may be invoked only against the vehicle owner who knows or should have known that the use would involve an inordinate risk of physical harm."  *Morrell v. Williams*, 279 Md. 497, 504, 366 A.2d 1040, 1043 (1976).

Jobes, the operator of the Bradway truck, was neither young (50 years old when the accident occurred) nor inexperienced (a truck driver or operator of heavy equipment for 16 years when the accident occurred).  Plaintiffs thus must demonstrate *otherwise* the factor(s) Bradway knew or should have known, by providing the tractor-trailer to Jobes, involved an unreasonable risk of physical harm to himself and others.  *See Curley v. General Valet Serv., Inc.*, 270 Md. 248, 265, 311 A.2d 231, 240 (1973) ("Since Stevenson was neither a youthful nor inexperienced driver, within the contemplation of the Restatement rule, evidence relevant to the question of negligent entrustment in this case must show, to be legally sufficient to justify submission of the issue to the jury, that General Valet knew, or from facts known to it should have known, that

4

Stevenson, because of a habit of incompetent driving, was likely to use the van in a manner involving an unreasonable risk of bodily harm to others.").

Jobes began his employment with Defendant Bradway in 1995.  When Jobes applied for employment, his commercial driver's license ("CDL") was valid and his motor vehicle record was clean as reflected on a D. A. C. Services MVR Report dated January 11, 1996.  *See* Docket No. 47, Ex. 2-A.  Jobes has had a CDL for approximately 16 years or since 1989.  *See id.*, Ex. 1 (Jobes Dep. 13:14 - 16).  His CDL has never been revoked or suspended, nor any other driver's license.  *Id.* (Jobes Dep. 14:19 - 15:2).

When Jobes applied for employment, Defendant Bradway requested information from Jobes' previous employers, directed Jobes to provide a urine specimen (which was negative for drugs), administered a road test (which Jobes passed), and administered a written examination for drivers (which Jobes passed).  After beginning his employment with Bradway but before the fatal accident on November 4, 2003, Jobes received six traffic citations over a period of approximately seven years (June 1996 - April 2003) for the following reasons:

| | | |
|---|---|---|
| a. | 6/24/96 | disregard for traffic control device; |
| b. | 4/27/99 | cited for inattentive driving; |
| c. | 1/9/01 | failed to obey a directional sign with no points; |
| d. | 8/2/02[1] | cited for operating a streetcar or bus with a door open with no points assessed; |
| e. | 10/13/02 | disregard for traffic signal; and |

---

[1] According to the D.A.C. Services, MVR Report of December 28, 2001, this violation occurred on August 2, **2000**.  *See* Docket No. 47, Ex. 2-A.

f.     4/25/03     cited for driving an unregistered vehicle[2] and erratic lane changes. The citation lists the offenses as unregistered vehicle and failing to keep to the right.  *See* Docket No. 47, Ex. 2-A.  Jobes entered a guilty plea on 5/1/03 indicating that there was not a sign restricting trucks from traveling in the far left lane.

Mem. Supp. Def's Mot. Partial Summ J. ("Def's Mem."), at 6.

Jobes was involved in an accident on July 17, 2003, approximately four months before the fatal accident in this case.  According to Jobes, while driving in New Jersey, a car stopped in front of him unexpectedly to make a left turn.  The driver of the car had no turn signal or brake lights.  Jobes could not stop and he hit the car.  Jobes was not traveling fast.  The driver of the car, a woman, was not injured.  She admitted to the police officer that her turn signal was not working.  Docket No. 47, Ex. 1 (Jobes Dep. 115:5 - 116:21).

Defendant notes that Jobes had been medically cleared to operate a tractor-trailer in interstate commerce under Department of Transportation regulations.  During his employment with Bradway, physical examinations were required and random drug testing administered.  Jobes never failed an alcohol or drug test.  While employed with Bradway, Jobes took safety courses and special driver's courses such as emergency reaction driving training, a professional driver improvement course, and hazardous materials training.  Jobes was known as a good or better than average driver.  "To be sure, during his tenure with Bradway, Jobes's driving record was not spotless, nor was it a record in which Jobes had been involved in any prior accident causing serious personal injury."  Def.'s Mem., at 5-6 (footnote omitted).

---

[2] Jobes was driving a Bradway trailer.  According to Jobes, Defendant Bradway was charged with the unregistered vehicle violation.  Docket No. 47, Ex. 1 (Jobes Dep. 61:15 - 22).

In their Opposition Plaintiffs claim Jobes suffered from a sleeping disorder. "If that condition was known by the Defendant and it allowed Jobes to continue driving its truck knowing Jobes had a propensity to drive while drowsy and fall asleep behind the wheel or be inattentive to his driving, that knowledge gives rise to a predicate that permits a jury to find Defendant 'negligently entrusted' a vehicle to its driver Jobes." Docket No. 50, ¶ 3. Michael Starner, an unauthorized but invited passenger[3] in the Bradway tractor-trailer when the fatal accident occurred,[4] disclosed during his deposition that Jobes told him that he (Jobes) fell asleep behind the wheel. *Id.*, Ex. (Starner Dep. 67:17 - 68:3). *See also* Docket No. 46, Ex. 3 (Starner Dep. 46:10 - 47:22). Plaintiffs further argue Jobes' driving record of six citations in seven years would permit a jury to conclude Jobes' history of unsafe driving was known to Defendant and thus Defendant should not have permitted Jobes to drive a commercial vehicle.

In its Reply Defendant notes that Starner testified that Jobes' wife told him that Jobes had a "sleeping disorder." This statement is non-admissible hearsay. Even if this statement was true and even if Jobes fell asleep behind the wheel, Plaintiffs fail to demonstrate Defendant knew of Jobes' propensity. Regarding Jobes' driving record, there is no evidence of a propensity to cause catastrophic accident. The evidence shows, Defendant contends, that Jobes had a valid CDL and was medically qualified to drive. Defendant argues there is no claim of negligent entrustment based on the record.

---

[3] *See* Docket No. 47, Ex. 1 (Jobes Dep. 63:11 - 16) ("Q: How did [Starner] come to be in your vehicle? A: A little while before he was with me, I picked him up down in South Carolina. He was coming north. He had a sign saying Delaware. I was coming to Delaware, and I picked him up and I gave him a ride."). According to Jobes, Starner accompanied him in the Bradway tractor-trailer for approximately a month before the fatal accident.
       Defendant Bradway has a policy precluding passengers in its vehicles unless expressly approved. *See id.*, Ex. 4 (M. Bradway Dep. 27:9 - 28:9); Ex. 5 (A. Bradway Dep. 35:9 - 36:6).

[4] Starner was sleeping in the sleeper compartment of the Bradway tractor-trailer when the Bradway vehicle overturned after striking the street sweeper.

This Court finds the *Curley* case instructive in resolving this issue.  In that case, Stevenson, while on personal business, drove his employer's van through a policeman's stop signal and a red light.  The van collied with a fire truck, killing a fireman and seriously injuring two other firemen.  Caplan, General Valet Services, Inc.'s ("General Valet") president, hired Stevenson approximately three months before the accident.  Caplan visited the Department of Motor Vehicles ("DMV") to check Stevenson's chauffeur's license and his driving record.  The DMV's records showed Stevenson had been issued ten citations in five years.  Six of the ten citations were moving violations.  Three of the six moving violations occurred within 16 months of Stevenson's employment with General Valet.  Four of the six moving violations involved disregarding signs, signals and traffic devices, the same misconduct causing the fatal accident. *Curley*, 270 Md. at 266, 311 A.2d at 240.

The Court of Appeals found that Stevenson's record of moving violations, known to General Valet when it employed him, coupled with the type of vehicle he was driving and the area where Stevenson drove, "constitutes evidence which, though meager, was legally sufficient in the circumstances of this case to permit the jury to rationally find that Stevenson's failure to heed traffic control devices was habitual and as a consequence rendered him an incompetent driver whose use of the van entrusted to him by General Valet posed an unreasonable risk of physical harm to others."  *Id.* at 266, 311 A.2d at 241.  The court noted Stevenson was neither a young or inexperienced driver.  *Id.* at 265, 311 A.2d at 240.

With regard to the present litigation, viewing the evidence in the light most favorable to Plaintiffs, the undisputed evidence reveals Jobes received six violations over a period of seven years while employed with Bradway.  Three of the citations were for disregarding traffic signs or

signals; a fourth was for inattentive driving.  Bradway concedes that its former employee, Jobes, did not use reasonable care in operating the tractor-trailer on November 4, 2003 and was thus primarily negligent.

Contrary to Stevenson's driving record in *Curley*, Jobes' driving record was clean when Bradway hired him.  Jobes never failed a drug or alcohol test and was physically examined regularly.  The biennial physical examinations and other medical records do not indicate any alleged "sleeping disorder."

"The principal feature of [negligent entrustment] is the knowledge of the supplier concerning the likelihood of the person to whom he entrusts the chattel to use it in a dangerous manner."  *Mackey v. Dorsey*, 104 Md. App. 250, 258, 655 A.2d 1333, 1337 (1995).  What did Bradway know?  If Jobes suffered from a sleeping disorder, there is no evidence showing Bradway knew or should have known of this disorder.  Although Jobes received six violations in seven years, his driving record does not evidence "reckless acts occurring with such frequency and in such a manner as to put the entrustor on notice of the danger involved."  *Curley*, 270 Md. at 267, 311 A.2d at 241.  On June 24, 1996, Jobes received a citation for disregard of traffic control devices.  Almost three years later, on April 27, 1999, Jobes received his second citation for inattentive driving.  In each of the following four years, Jobes received a citation: (a) August 2, 2000 for operating a commercial vehicle with a door open, (b) January 9, 2001 for failing to obey a directional sign, (c) October 13, 2002 for disregarding a traffic signal, and (d) April 25, 2003 for failing to keep to the right.

Are these violations indicative of a habit of incompetent driving or, instead, isolated instances of carelessness?  Plaintiffs argue Jobes has a history of unsafe driving which was

known to Defendant.  "[I]f the circumstances suggested that further inquiry was appropriate and, despite such circumstances, the entrustor failed to make a reasonable investigation, the entrustor may be liable."  *Herbert v. Whittle*, 69 Md. App. 273, 282, 517 A.2d 358, 362 (1986). Defendant employed a Director of Safety.  Defendant acknowledges it reviewed annually Jobes' driving record from 1997 to 2002 before the November 4, 2003 accident.  *See* Docket No. 47, Ex. 2 (Warren Aff. ¶ 5(h)).

Unfortunately, Plaintiffs do not present any evidence indicating if the number and/or type of citations Jobes received would, in accordance with industry standard, suggest or mandate that Bradway take some affirmative steps, such as requiring Jobes to take an additional safety course and/or a professional driver improvement course, or result in the suspension of Jobes' CDL.  For Bradway to be on notice that Jobes' past conduct would result in foreseeable harm, "it must be conduct so repetitive as to make its recurrence foreseeable."  *Curley*, 270 Md. at 267, 311 A.3d at 241.  Based on the evidence of record and viewing that evidence in the light most favorable to Plaintiffs, the court finds Jobes' driving infractions were not so repetitive as to make their recurrence foreseeable.  *Compare Snowhite v. State, Use of Tennant*, 243 Md. 291, 221 A.2d 342 (1966) (finding sufficient evidence to support negligent entrustment claim where despite knowing of the employee's three previous convictions for reckless driving, multiple moving violations, and the employee's habitual drinking, the employer entrusted the employee to drive a gasoline truck).

Defendant has demonstrated that there is no genuine issue as to any material fact regarding Count III.  Defendant is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  For the foregoing reasons, an order will be separately entered dismissing with prejudice

Count III of Plaintiffs' Amended Complaint.


January 25, 2006                                    /s/
_____        _____
        Date                                    WILLIAM CONNELLY
                                        UNITED STATES MAGISTRATE JUDGE