**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SABRINA MILLER-CHISLEY, et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil No. WGC-05-250 |
| | ) | |
| BRADWAY TRUCKING, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

Pending before the court and ready for resolution is Plaintiffs' Motion *In Limine* (Docket No. 52). Defendant filed a Memorandum in Response (Docket No. 58). At the February 3, 2006 pretrial conference, counsel for Plaintiffs stated a Reply will not be filed. No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md.).

Plaintiffs ask the court to exclude the following opinions, document and information from the trial:

1.      The opinion of David Buchholz, M.D., Defendant's expert, regarding diffuse microscopic axonal injury detectable in decedent Miller;

2.      Dr. Buchholz's opinion that decedent Miller suffered a skull fracture as a result of the November 4, 2003 collision;

3.      The MAARS Report prepared by Trooper Lewis; and

4.      The fact that Wilfredo Benitez failed to attend two scheduled depositions.

Plaintiffs characterize Dr. Buchholz's opinion regarding diffuse microscopic axonal injury as speculative. Dr. Ronald J. Ross, Plaintiffs' expert, opines, "[d]uring and after the impact, [Miller] was conscious for at least two seconds and for as long as 30 seconds." Docket

No. 58, Ex. 1, at 4.  Dr. Buchholz's opines that Miller "experienced no conscious pain and suffering but was either rendered immediately unconscious or experienced sudden death. . . ." Docket No. 58, at 1.  The court finds Dr. Buchholz's opinion counters Dr. Ross's opinion and is admissible.  Plaintiffs' request to exclude this opinion is DENIED.

Similarly, Dr. Buchholz's opinion about the decedent suffering a skull fracture is admissible.  It is undisputed that the pathologist did not determine whether the decedent sustained a skull fracture.  "Dr. Buchholz rendered the opinion that based upon the extreme nature of the collision, based upon photographs reviewed by Dr. Buchholz and the description of other injuries to Miller's body including numerous broken ribs, a broken sternum, lacerations to the heart and aorta and a broken humerus, that he would not be surprised if in fact Mr. Miller had sustained a skull fracture."  Docket No. 58, at 4.  Plaintiffs' request to exclude this opinion is DENIED.

With regard to the MAARS Report, it is the court's understanding that Plaintiffs will call Trooper Rickard as an expert witness who will testify, based on his investigation of the accident, that decedent Miller did not contribute to the accident and could not have avoided the accident. Trooper Lewis testified at his deposition that he consulted with Trooper Rickard and Trooper Dean before preparing the MAARS Report.  The three troopers determined decedent Miller failed to pay full time and attention and this determination is documented on the MAARS Report.

Defendant argues Trooper Lewis's testimony is admissible, and perhaps a redacted version of the MAARS Report, as impeachment evidence.  "Lewis's testimony tends to impeach Rickard's opinion that he presented in the Crash Team Investigation Report issued almost two

and a half months after [the] accident, that Rickard was once of the opinion that Miller had contributed to the accident." Docket No. 58, at 6.

If Trooper Rickard testifies consistent with his Crash Team Investigation Report, Defendant may call Trooper Lewis as an impeachment witness. The court notes that Trooper Rickard apparently changed his opinion about Miller's contributing circumstances to the November 4, 2003 accident three months later after an extensive investigation, *not* for the first time at trial. Trooper Rickard may be questioned about the contrasting opinions — an initial assessment after consulting with other troopers the day of the accident versus an opinion developed after conducting a detailed investigation. If Trooper Rickard admits he initially, after consulting with other troopers, determined Miller failed to pay attention, the court will not permit the MAARS Report into evidence. However, if Trooper Rickard denies initially finding that Miller failed to pay attention, the court may be inclined to admit a redacted version of the MAARS Report as evidence. *See* Fed. R. Evid. 613(b). The court will not prematurely rule on the latter scenario and will make a ruling, if necessary, during trial. Plaintiffs' request to exclude the MAARS Report is DENIED.

Finally, regarding Benitez's failure to appear for two depositions, Defendant fails to articulate the relevancy of this fact. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Defendant argues, "[t]he fact that Benitez was an evasive witness, having twice failed to appear for his deposition despite being subpoenaed for appearance, is admissible as impeachment evidence." Docket No. 58, at 8. Defendant contends Benitez's deposition, affidavit, and written statement

3

to the police on the scene of the accident are inconsistent.  Benitez's failure to attend two depositions is not probative of truthfulness or untruthfulness.  Benitez's multiple statements provide Defendant ample opportunity to cross examine and impeach him.  Plaintiffs' request to exclude questions about Benitez's failure to appear for two depositions is GRANTED.

For the foregoing reasons, an Order will be separately entered granting in part and denying in part Plaintiffs' Motion *In Limine*.

February 8, 2006                                                    /s/
_____              _____
        Date                                        WILLIAM CONNELLY
                                           UNITED STATES MAGISTRATE JUDGE