**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| SABRINA MILLER-CHISLEY, et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil No. WGC-05-250 |
| | ) | |
| BRADWAY TRUCKING, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

Pending before the court and ready for resolution is Defendant's Motion *In Limine* (Docket No. 53).  Plaintiffs filed an Opposition (Docket No. 59).  At the February 3, 2006 pretrial conference, counsel for Defendant stated a Reply will not be filed.  No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6 (D. Md.).

Defendant asks the court to rule the following evidence inadmissible and preclude counsel or any witness from mentioning or otherwise attempting to introduce:

> 1.      The testimony of plaintiffs' expert economist with respect to future economic loss beyond plaintiffs' age of majority and/or as to a duplicative recovery;
>
> 2.      The driving record of Joseph Jobes ("Jobes");
>
> 3.      That Jobes is alleged to have fallen asleep behind the wheel of the Bradway truck involved in the accident at issue and/or that he supposedly suffered from a sleeping disorder;
>
> 4.      The testimony from any lay witness that the underside of the Bradway truck would have been difficult "if not impossible" to be seen or that Miller could not have avoided the accident.

Docket No. 53, at 1-2.

With regard to Issue 2, because Defendant has conceded primary negligence by its driver,

Plaintiffs have no need to introduce Jobes' driving record.  *See* Docket No. 59, ¶ 14.  Thus, this issue is resolved.

With regard to Issue 3, at the pretrial conference, counsel for Plaintiffs indicated no intention to introduce evidence that Jobes had fallen asleep behind the wheel when the accident occurred.  However, Plaintiffs reserve their right to cross examine and impeach Jobes if, in the unlikely event, he changes his previous deposition and/or affidavit testimony or, if Bradway attempts to claim that foggy conditions caused the accident.  The court finds the issue resolved and will address any objections to Plaintiffs' cross-examination of Jobes on this topic, if necessary, during the trial.

With regard to Issue 4, Defendant seeks to preclude admission of any evidence regarding the difficulty of seeing the underside of the Bradway truck and that the accident between the Bradway truck and the Miller truck was unavoidable.  For the former, Defendant claims Jobes could not have observed the underside of the Bradway truck at the time and under the circumstances when the accident occurred.  Defendant argues Jobes lacked personal knowledge of the matter, Fed. R. Evid. 602, and thus this testimony should be excluded.  Regarding the latter, whether Miller could have avoided the accident is, according to Defendant, an ultimate issue of contributory negligence.  Plaintiffs will likely elicit testimony from Wilfredo Benitez, a lay witness.  "[O]pinion or conclusory testimony by lay witnesses is limited to those opinions or inferences which are either rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue or not based on scientific, technical or other specialized knowledge."  Docket No. 54, at 11-12.

In their Opposition Plaintiffs contend, under Federal Rules of Evidence 701 and 704,

Jobes' and Benitez's opinions are admissible because neither is based on specialized knowledge.

"They are the observations that Jobes and Benitez (both experienced tractor-trailer drivers) made

regarding the totality of the circumstances existing at the time of the accident that permit them to

render their opinions as to what a person in Miller's position could or couldn't see."  Docket No.

59, ¶ 20.  Plaintiffs also reject Defendant's assertion that the testimony is objectionable as an

opinion on the ultimate issue in the case.

      In the November 10, 2005 affidavit, Jobes declares the following:

> Due to the fact that my undercarriage and axles were facing
> oncoming traffic on Eastbound MD Rt. 301, with no reflectors and/or
> lights facing the same, it was very hard, if not impossible to observe
> the undercarriage of my trailer against the dark roadway given the
> existing lighting conditions.

Docket No. 46, Ex. 6 (Jobes Aff. ¶ 3).

      Presuming Jobes testifies consistent with his affidavit, his opinion is not based on

"scientific, technical, or other specialized knowledge" but instead qualifies as "rationally based

on the perception of the witness[.]"  Fed. R. Evid. 701.  Defendant may claim Jobes' opinion is

not "rational" because he was not in a position to observe the facts asserted in his affidavit, but

that is matter that can be challenged on cross-examination.  As the driver who is primarily

negligent for the accident, the court finds Jobes does have personal knowledge of the matter.

Fed. R. Evid. 602.

      Similarly, Benitez's testimony will not be excluded.  In his November 14, 2005 affidavit,

Benitez declares, "Michael Miller could not have done anything to avoid colliding with the

overturned tractor-trailer."  Docket No. 46, Ex. 9 (Benitez Aff. ¶ 4).  Presuming Benitez testifies

consistent with his affidavit, this testimony is admissible lay testimony "rationally based on the

perception of the witness[.]"   Fed. R. Evid. 701.  For the above reasons, Defendant's request to

exclude any evidence regarding the difficulty of seeing the underside of the Bradway truck or

that Miller could not avoid the collision is DENIED.

The remaining issue, the analysis by Plaintiffs' expert economist, was discussed

extensively during the February 3, 2006 pretrial conference.  The parties have resolved any

issues about "double counting."  Two sub-issues are still in dispute: (a) whether Plaintiffs'

wrongful death beneficiaries are entitled to economic loss until the age of majority (18 years old)

or beyond, and (b) regardless whether benefits cease at age 18 or continue after age 18, how are

economic losses computed?  For the former sub-issue the parties acknowledge this dispute is a

matter of first impression under Maryland law.  For the latter, there are two proposals for

computing economic loss: (a) income minus consumption, or (b) the amount of support Miller

provided while living.

Regarding the first sub-issue, the relevant portion of the Maryland Wrongful Death

Statute states:

> (d)  *Damages — Death of spouse, minor child or parent, unmarried*
> *children who are not minors.* — The damages awarded under
> subsection (c) of this section are not limited or restricted by the
> "pecuniary loss" or "pecuniary benefit" rule but may include
> damages for mental anguish, emotional pain and suffering, loss of
> society, companionship, comfort, protection, marital care, parental
> care, filial care, attention, advice, counsel, training, guidance, or
> education where applicable for the death of:
> (1) A spouse;
> (2) A minor child;
> (3) A parent of a minor child; or
> (4) An unmarried child who is not a minor child if:
>> (i) The child is 21 years old or younger; or
>> (ii) A parent contributed 50 percent or more of the child's support within
>> the 12-month period immediately before the date of death of the child.

4

> (e)   *Same — Death of children not described in subsection (d) or parent of a child who is not a minor.* — For the death of a child, who is not described under subsection (d) of this section, or a parent of a child, who is not a minor child, the damages awarded under subsection (c) of this section are not limited or restricted by the "pecuniary loss" or "pecuniary benefit" rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, education, or guidance where applicable.

Md. Code Ann., Cts. & Jud. Proc. § 3-904.

Defendant argues the children of Michael Miller can recover damages until they reach majority. In contrast, Plaintiffs contend they are entitled to recover damages beyond the age of majority. "[T]he plain language of the statute evidences neither a time limit for a minor plaintiff's recovery nor an age beyond which an individual otherwise qualified would be disqualified. Subsection (e), which was recently added, makes it clear that a child of a decedent, who is not a minor, may obtain both pecuniary and solatium benefits." Docket No. 59, ¶ 9.

In comparing subsections (d) and (e) of Section 3-904, it is apparent that subsection (d) permits the following individuals to recover damages in a wrongful death case: a spouse, a minor child, a parent of a minor child, and an unmarried child who is not a minor if the unmarried child is 21 years or younger, or if the unmarried child receives 50 percent or more of support from his/her parents in the preceding 12 months before his/her death. Subsection (e) allows a parent of child not described in subsection (d) to recover for the death of a child, and allows a child, who is not a minor, to recover for the death of a parent. Subsection (e) expands the categories of individuals permitted to recover damages in wrongful death cases. "In 1997, the Wrongful Death Statute was amended to more broadly permit recovery by parents for the death of adult children, and recovery by adult children for the death of a parent. CJ § 3-904(e)." *Freeburger v.*

*Bichell*, 135 Md. App. 680, 692, 763 A.2d 1226, 1232 (2000).

Defendant cites as authority *Cincotta v. United States*, 362 F. Supp. 386, 407 (D. Md. 1973) in which the court stated, "[a] child's damages for the death of a father are estimated up to the time of majority. . . ." The *Cincotta* court was interpreting and applying the 1970 version of § 4(b) of Article 67, the predecessor to § 3-904 of the Courts and Judicial Proceedings Article. The Wrongful Death Statute has been amended multiple times since 1970. With the 1997 amendment the Maryland General Assembly explicitly permitted adult children to recover for the wrongful death of a parent. The court thus finds that Plaintiffs are entitled to recover damages beyond the age of majority.

Finally, the other sub-issue concerns how economic loss should be computed. One proposal permits Plaintiffs to receive the difference between Michael Miller's income minus consumption. It is not apparent that this equation includes Michael Miller's income dedicated to his personal use.

Michael Miller financially supported his four daughters. He provided $15,490 annually or $1,290.83 monthly. *See* Docket No. 54, Ex. 1 at 5. The second proposal permits Plaintiffs to receive the actual amount of support Miller provided while living.

"'The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased.'" *Walston v. Sun Cab Co., Inc.*, 267 Md. 559, 572, 298 A.2d 391, 398 (1973) (quoting *Chesapeake & Ohio Ry. v. Kelly*, 241 U.S. 485, 489 (1916)). The issue of computing economic loss is not a matter of law for the court to resolve but a factual determination reserved for the jury. "[T]he general rule in wrongful death cases is that the award of damages is within

6

the sound discretion of the jury." *Ory v. Libersky*, 40 Md. App. 151, 166, 389 A.2d 922, 931

(1978).

 The court will not decide which method of calculating or measuring economic loss is

more appropriate.  Instead, the parties will be permitted to argue to the jury the methodology

each party contends should be used in calculating economic loss.  At the conclusion of the

presentation of evidence, the court intends to instruct the jury on economic loss as follows:

> The economic losses to be considered include the financial support
> as well as the replacement value of the services that the deceased
> furnished or probably would have been expected to furnish.

MPJI-Cv 10:23.

 For the foregoing reasons, an Order will be separately entered denying in part and finding

as moot in part Defendant's Motion *In Limine*.


 February 9, 2006                                              /s/
_____                    _____
        Date                                          WILLIAM CONNELLY
                                            UNITED STATES MAGISTRATE JUDGE